******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ERIC GOODEN *v.* COMMISSIONER OF CORRECTION
(AC 38169)

DiPentima, C. J., and Prescott and Gruendel, Js.

*Submitted on briefs September 19—officially released November 15, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Walter C. Bansley IV* and *Judie Marshall* filed a brief for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, *Gail P. Hardy*, state's attorney, and *Randall Bowers*, former special deputy assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Eric Gooden, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that his trial counsel did not provide ineffective assistance at his sentencing. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history are necessary for our discussion. On April 3, 2007, the petitioner was arrested and charged in the Superior Court at Manchester in docket number H12M-CR-07-0210233-T. He was incarcerated in lieu of bond while awaiting the resolution of these charges from Manchester. While in pretrial custody, he was arrested on January 15, 2008, 286 days later, and charged in the judicial district of Tolland in docket number TTD-CR-08-0091161-T.

On November 21, 2008, the petitioner appeared in Tolland before the court, *Hon. Terrance A. Sullivan*, judge trial referee, to plead guilty to burglary in the first degree in violation of General Statutes § 53a-101 and conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 and 53a-101 in docket number TTD-CR-08-0091161-T. After setting forth the factual bases for these crimes, the prosecutor stated: "The agreement in the case is for a sentence of ten years to serve plus five years special parole. The agreement also incorporates a pending commercial burglary that the [petitioner] has in Manchester. [There] is the understanding—both parties I believe—that the [petitioner] will plead to that case and that that case will be transferred here for sentencing and he will receive a concurrent sentence on that." Leslie Cunningham, the petitioner's attorney in docket number TTD-CR-08-0091161-T, noted her agreement with the prosecutor's statement of the plea, subject to one caveat. "There— there's a possible jail credit issue, and what we contemplated was a total effective sentence of ten [years] to serve, five [years] special parole, so we may adjust one or the other to reflect the ten year sentence." Cunningham explained that the petitioner had been arrested first for the crimes charged in Manchester, and therefore the sentence imposed would need to be adjusted for the petitioner to serve a total of ten years incarceration after receiving credit for all of his pretrial incarceration from April 4, 2007, the date which he first entered the custody of the Department of Correction.

Judge Sullivan immediately noted his concern with the jail credit issue. "Before we go too far on this, that— if you haven't got that straightened out now, then I'm not sure why he's pleading now. If the agreement is the sentence is going to be ten years plus five special parole, that's the sentence I'm going to impose . . . ten years in prison plus five years special parole. I'm not going

to impose a sentence of nine years and eight months and twenty-six days and plus five years of special parole. So if the agreement—I—when we discussed this matter, I thought the agreement—and in fact, I thought it was my offer that I made which was ten, ten [years] plus five special parole." Cunningham mentioned that there had been an off-the-record discussion regarding whether the petitioner's sentence could be structured "so [that] it reflects the ten years." The court iterated that it would impose a sentence of ten years incarceration and five years of special parole and indicated that it did "not want you to come back sometime next month and say, well, I know that the plea agreement is ten plus five special parole, but, Judge, we, that's what we want him to—we want him to get extra credit or some credit for this so you can't really give him ten plus five special parole." Cunningham then asked for and received an opportunity to discuss the matter with the petitioner while the court turned to other matters.

After returning to the petitioner's case, and being told by Cunningham that the matter was ready to proceed, the court conducted a plea canvass of the petitioner. It explained the sentence that would be imposed: "The plea agreement is that, at the time of sentencing on these charges, I'm going to impose a sentence of ten years imprisonment, followed by five years of special parole. And it's also my understanding that [docket number H12M-CR-07-0210233-T] is going to be sent over here and you're going to be sentenced on that at the same time, and that sentence from [docket number H12M-CR-07-0210233-T] will be incorporated into this sentence. *But the sentence that I'm going to impose for both of them combined out of that, out of that proceeding, is going to be ten years of imprisonment plus five years of special parole.*" (Emphasis added.) After the petitioner indicated that he understood the sentence, the court accepted the plea and found the petitioner guilty of burglary in the first degree and conspiracy to commit burglary in the first degree.

On December 8, 2008, the petitioner appeared before Judge Ward in Manchester, to plead guilty, pursuant to the *Alford* doctrine, to larceny in the first degree in violation of General Statutes § 53a-122 and burglary in the third degree in violation of General Statutes § 53a-103 in docket number H12M-CR-07-0210233-T.[1] The prosecutor set forth the facts underlying these charges, and noted that the plea called for a sentence of five years incarceration to run concurrent with the sentence imposed in docket number TTD-CR-08-0091161-T. The court accepted the petitioner's *Alford* plea and found him guilty of larceny in the first degree and burglary in the third degree.

On December 12, 2008, the petitioner appeared before Judge Sullivan for sentencing in both docket numbers. At this proceeding, the court sentenced the petitioner

in accordance with his plea agreements. It imposed a total effective sentence of ten years incarceration and five years special parole. The petitioner expressly agreed that the sentence was consistent with the plea agreements that he had made.

In March, 2012, the petitioner, acting pro se, commenced the present action. He alleged that he had received 332 days of credit for his presentence incarceration from January 15, 2008 to December 12, 2008, but claimed that he should have received 618 days, the time period from April 4, 2007 to December 12, 2008. The petitioner filed an amended petition for a writ of habeas corpus, dated August 21, 2012, again claiming that he should have received a credit of 618 days, rather than 332 days, for his presentence incarceration.

On March 26, 2014, counsel for the petitioner filed an amended petition, alleging that the petitioner had received ineffective assistance of counsel and that his pleas in both docket numbers were not knowing, intelligent or voluntary. With respect to the former, the petitioner claimed that Cunningham, inter alia, had failed to ask the sentencing court for credit from April 4, 2007, the first date he was in custody. The petitioner claimed that Cunningham's representation that he would receive jail credit dating back to April 4, 2007, induced him to plead guilty.

Following a one day trial, where Cunningham and the petitioner testified, the habeas court, *Fuger, J.*, issued an oral decision denying the petition for a writ of habeas corpus. The habeas court found that the controlling sentence[2] was imposed in docket number TTD-CR-08-0091161-T and that 332 days was all of the jail credit that he was entitled to under General Statutes § 18-98d. It further determined that Cunningham had not performed deficiently by failing to ask Judge Sullivan at sentencing for additional credit. It also concluded that the petitioner had not suffered any prejudice because Judge Sullivan unequivocally indicated on the record on the date of the plea that he would not award any additional jail credit. The habeas court also rejected the claim that the petitioner's pleas were involuntary. Following the denial of the petition, the habeas court granted the petition for certification to appeal.

On appeal, the petitioner claims that the habeas court improperly concluded that Cunningham did not provide ineffective assistance.[3] Specifically, he argues that Cunningham was deficient by failing to request that the court, at sentencing, award presentence credit for the 286 days that he was incarcerated in docket number H12M-CR-07-0210233-T, even though his controlling sentence was in docket number TTD-CR-08-0091161-T.[4] The petitioner also argues that "[t]here was a reasonable probability that—but for [Cunningham's] deficient performance—the result of the petitioner's sentence would have been different. . . . There was a reason-

able probability the court would have awarded 286 days of presentence confinement time to be applied to the controlling docket if [Cunningham] had made the request."

We begin our analysis by setting forth our standard of review and the legal principles relevant to this claim. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings [pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, supra, 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . .

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . To satisfy the second prong of *Strickland*, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Citation omitted; internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775–76, 138 A.3d 908 (2016); see also *Stanley* v. *Commissioner of Correction*, 164 Conn. App. 244, 253, 134 A.3d 253, cert. denied, 321 Conn. 913, 136 A.3d 1274 (2016); *Weathers* v. *Commissioner of Correction*, 133 Conn. App. 440, 443, 35 A.3d 385, cert. denied, 304 Conn. 918, 41 A.3d 305 (2012).

In order to prevail, a petitioner must prevail on both *Strickland* prongs. *Lewis* v. *Commissioner of Correction*, 165 Conn. App. 441, 451, 139 A.3d 759, cert. denied, 322 Conn. 901, 138 A.3d 931 (2016). Put another way,

"[i]t is axiomatic that courts may decide against a petitioner on either prong, whichever is easier." Id.

During the November 21, 2008 proceeding, the prosecutor stated that the petitioner's plea deal called for a sentence of ten years incarceration, plus five years special parole. When asked by the court if that was the petitioner's understanding, Cunningham raised the issue of presentence jail credit. Judge Sullivan stated that the sentence would be ten years incarceration plus five years special parole and that he would not modify those terms to account for any credit that the petitioner was not statutorily entitled to. At the conclusion of this colloquy, the court emphasized that "the sentence that I'm going to impose is ten [years incarceration] plus five [years] special parole. . . . I just don't want you to come back sometime next month and say, well, I know that the plea agreement is ten plus five special parole, but, Judge, we, that's what we want him to— we want to get extra credit or some credit for this so you can't really give him ten plus five special parole." The court then afforded Cunningham time to speak with the petitioner, who subsequently stated on the record that he understood what sentence would be imposed. During the plea canvass, the petitioner stated that he knew that the court would impose a sentence of ten years incarceration and five years special parole.[5]

At the habeas trial, Cunningham testified on cross-examination that she was familiar with Judge Sullivan's policy of not adjusting sentences based on jail credits earned in situations similar to the petitioner's case. She also stated that Judge Sullivan would not have altered his policy in the present case, even if she had raised the jail credit issue at the petitioner's sentencing.

In *Weathers* v. *Commissioner of Correction*, supra, 133 Conn. App. 445, we concluded that "the mere possibility that the court might have imposed a more lenient sentence on account of this pretrial incarceration does not amount to a reasonable probability that it would have done so." In the present case, the facts demonstrate that there was no possibility, much less a probability, of a more lenient sentence. Judge Sullivan expressly stated that he would not adjust the petitioner's sentence of ten years incarceration and five years of special parole as a result of the petitioner's 286 days of pretrial incarceration in docket number H12M-CR-07-0210233-T. As stated by the habeas court: "Judge Sullivan . . . [made] it clear that he [was] not going to impose any sentence other than ten years [incarceration and five years special parole]. . . . Even if . . . Cunningham had asked, it is crystal clear [from] both . . . her testimony and from the transcript that Judge Sullivan was not going to award any jail credit [for the petitioner's pretrial incarceration in docket number H12M-CR-07-0210233-T]." After a review of the record, we conclude that the petitioner did not meet his burden

of establishing a reasonable probability that his sentence would have been different had Cunningham renewed the jail credit claim at the sentencing proceeding. Accordingly, the habeas court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner also admitted to violating his probation in violation of General Statutes § 53a-32. As a result of these proceedings, his probation was terminated.

[2] The ten year period of incarceration in docket number TTD-CR-08-0091161-T is the controlling sentence because that sentence had the longest term to run. See *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 825, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003); see also General Statutes § 53a-38 (b); *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 801, 950 A.2d 1220 (2008).

[3] The habeas court stated in its memorandum of decision: "Judge Sullivan was completely correct when he refused, and had apparently in the past refused, to honor the request by counsel that a defendant receive jail credit. I happen to be in complete accord with Judge Sullivan on that point. I also do not award jail credit when a person is sentenced because it is not within the power of a Superior Court judge to do so.

"I'm well aware that there are some of my colleagues who feel that it's appropriate and they go ahead and award jail credit. In the opinion of this court, that is an illegal ultra vires act. It is beyond the law and the judge has no authority to do so.

"Furthermore, that places the [respondent, the Commissioner of Correction]—when a judge awards jail credit illegally, in this court's opinion, that places the [respondent] in an untenable position where the [respondent] is mandated by statute, Connecticut General Statutes § 18-98d, to correctly determine jail credit. To the extent that the Department of Correction is honoring an order from a judge to award jail credit, this court is of the opinion that that action by the Department [of Correction] is contrary to statute and therefore illegal.

"When a judge illegally awards jail credit, he places—he or she places the [respondent] in a position of which, do I disobey the statutory mandate set forth by the legislature, or do I risk being in contempt of court. . . . There is, simply put, zero authority for Judge Sullivan to have awarded jail credit in [this] case."

To be clear, Judge Fuger determined that there was no authority for Judge Sullivan to award the petitioner a jail credit for the 286 days of incarceration beginning on April 4, 2007, in docket number H12M-CR-07-0210233-T. The petitioner did receive credit for 332 days of presentence incarceration beginning in January 15, 2008. See General Statutes § 18-98d (a) (1).

On appeal, the petitioner also claims that the habeas court improperly concluded that "the practice of awarding jail credit when defendants are not statutorily entitled is an illegal ultra vires act." Specifically, he contends that under the broad discretion afforded to trial judges with respect to sentencing, Judge Sullivan had the authority to craft a sentence of nine years and seventy-nine days that accounted, sub silentio, for the 286 days of jail credit earned under the noncontrolling docket number H12M-CR-07-0210233-T.

We need not decide this issue in the present case, because Cunningham was aware of the jail credit issue and presented it to Judge Sullivan, who clearly rejected any possibility that he would incorporate the jail credit earned from April 4, 2007, into the petitioner's sentence. Judge Sullivan announced his intention to sentence the petitioner in accordance with the plea bargain reached by the parties, which was ten years incarceration and five years of special parole, following the guilty pleas in the two docket numbers. We leave consideration of whether "the practice of awarding jail credit when defendants are not statutorily entitled is an illegal ultra vires act" for another day.

[4] The petitioner does not claim that he was statutorily entitled, pursuant to § 18-98d (a), to the 286 days of jail credit, but rather bases his claim on the broad discretion afforded to a sentencing court. See, e.g., *Weathers* v. *Commissioner of Correction*, 133 Conn. App. 440, 443–45, 35 A.3d 385, cert. denied, 304 Conn. 918, 41 A.3d 305 (2012).

[5] During the habeas trial, Cunningham testified that she did not have any discussions on the record at the sentencing proceedings regarding the jail credit issue.

_____