******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MARCUS HURDLE
## (AC 44701)

Alvord, Prescott and Moll, Js.

*Syllabus*

Convicted, on pleas of guilty, of the crimes of robbery in the first degree and conspiracy to commit robbery in the first degree, the defendant appealed to this court from the judgment of the trial court, claiming, inter alia, that the trial court improperly concluded that it lacked the authority to award him presentence confinement credit pursuant to statute (§ 18-98d). The defendant had been incarcerated on other convictions when he entered into an agreement with the state under which he would plead guilty to charges of robbery in the first degree and conspiracy to commit robbery in the first degree in exchange for the entry of a nolle prosequi as to all other charges he was facing. The trial court accepted the pleas after canvassing the defendant, who indicated that he understood the terms of the agreed upon sentence. At sentencing, the defendant, for the first time, claimed that he was entitled to certain presentence confinement credit. The court declined to award presentence confinement credit and imposed the agreed upon sentence. *Held*:

1. The defendant could not prevail on his claim that the trial court, in structuring his sentence, had the authority and discretion to account for presentence confinement credit that the court determined to be appropriate: under § 18-98d (c), the Commissioner of Correction has the sole responsibility and authority to calculate and apply presentence confinement credit toward the sentence that actually was imposed by the court, as presentence confinement credit is not a part of a sentence but a calculation of the amount of credited time a defendant already has served toward completing that sentence, and, although § 18-98d contains no language that explicitly bars a sentencing court from awarding presentence confinement credit, our courts have clearly established that presentence confinement credit is a creature of statute; moreover, the defendant presented no appellate authority in support of his assertion that, because the trial court has broad authority to craft and impose sentences, it also has the inherent authority to award presentence confinement credit, the legislature having expressly placed the authority to apply presentence confinement credit in the hands of the Commissioner of Correction; furthermore, although sentencing courts differ in their views about how to address issues concerning presentence confinement credit, including, as did one of the courts that imposed a prior sentence against the defendant, by placing an order on the judgment mittimus that the defendant was to be given presentence confinement credit, that notation was not binding on the Commissioner of Correction, who has, in the first instance, the authority to calculate and apply presentence confinement credit.

2. The defendant failed to present any evidence to support his claim that the trial court improperly accepted his guilty pleas and thereafter denied his motion to withdraw them because there was no meeting of the minds regarding the terms of the pleas: the plea agreement between the defendant and the state did not include any offer or acknowledgment by the state regarding presentence confinement credit, which defense counsel acknowledged on the record, the prosecutor indicated that presentence confinement credit was never part of the plea bargaining discussions, and the defendant acknowledged more than once during the court's initial plea canvass that he understood the terms of the agreed upon sentence.

3. The defendant could not prevail on his unpreserved claim that the trial court's plea canvass was constitutionally invalid because he was not advised that his guilty pleas would operate as a waiver of his right to a jury trial; although the court did not indicate that the waiver included the right to a jury trial, the defendant acknowledged during the canvass that he was waiving his right to a trial by pleading guilty, and, because he was represented by counsel and had elected a jury trial as part of his initial plea of not guilty, the record was sufficient to infer that he

understood that his waiver of a right to a trial meant the right to a jury trial.

Argued November 8, 2022—officially released January 31, 2023

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of home invasion, robbery in the first degree, conspiracy to commit robbery in the first degree and criminal possession of a firearm, and, in the second part, with being a persistent dangerous felony offender, brought to the Superior Court in the judicial district of Ansonia-Milford, where the defendant was presented to the court, *Brown, J.,* on pleas of guilty to robbery in the first degree and conspiracy to commit robbery in the first degree; thereafter, the court denied the defendant's motion for certain presentence confinement credit; subsequently, the court, *Brown, J.,* denied the defendant's motion for reconsideration or to withdraw the pleas and rendered judgment in accordance with the pleas; thereafter, the state entered a nolle prosequi as to the charges of home invasion, criminal possession of a firearm and being a persistent dangerous felony offender, and the defendant appealed to this court. *Affirmed.*

*James B. Streeto,* senior assistant public defender, for the appellant (defendant).

*Lisa F. Rubertone,* senior assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley,* state's attorney, and *Howard S. Stein,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Marcus Hurdle, appeals from the judgment of conviction, rendered following his entry of guilty pleas pursuant to the *Alford* doctrine,[1] of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a). The defendant claims that the trial court improperly (1) determined that it lacked the authority, in accordance with General Statutes § 18-98d, to award him presentence confinement credit, (2) accepted his guilty pleas and denied his subsequent motion for jail credit or to withdraw his pleas, despite his contention that there was never a "meeting of the minds" regarding the terms of his plea agreement with the state, and (3) violated his constitutional rights by failing to advise him during his plea canvass that his guilty pleas would operate as a waiver of his right to a trial by jury. We affirm the judgment of conviction.

The following undisputed facts and procedural history are relevant to our consideration of the defendant's claims. On January 11, 2016, the defendant was sentenced in two criminal files factually unrelated to the present matter.[2] He received concurrent sentences of five years of incarceration, execution suspended after nine months, followed by three years of probation. On July 20, 2018, the defendant admitted to violating the terms of his probation and was released pending sentencing on a *Garvin* plea agreement (probation files).[3]

Less than one month later, on August 16, 2018, the defendant participated in a robbery in West Haven that led to the conviction now under review. Although the defendant and his coconspirators initially evaded the police following the robbery, the defendant was apprehended later that day by the New Haven police.[4] Because of his actions during the arrest in New Haven, the defendant was charged in the judicial district of New Haven in Docket No. CR-18-0186768 with interfering with a police officer and with criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (pistol possession file). He was detained on bond on those charges.

Subsequently, on October 24, 2018, while still detained on bond in the pistol possession file, the defendant was arrested by warrant in connection with the West Haven robbery. He was charged in the judicial district of Ansonia-Milford in Docket No. CR-18-0097217 with home invasion in violation of General Statutes § 53a-100aa (a) (1), robbery in the first degree in violation of § 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1) (robbery file). The state also filed a substitute part B information charging

the defendant as a persistent dangerous felony offender under General Statutes § 53a-40 (a) (1). At his arraignment on the charges in the robbery file, the court set a $300,000 bond and also raised the defendant's bonds in his other files.

On October 26, 2018, the court appointed an attorney for the defendant and confirmed that bond had been set in the robbery and probation files. The defendant subsequently entered not guilty pleas in the robbery file and elected a jury trial. On December 19, 2018, the defendant posted bond and was released.

Sentencing with respect to the probation files initially was scheduled for February 20, 2019. The defendant, however, arrived late and was intoxicated. Accordingly, the court raised the defendant's bond and continued the matter. On February 26, 2019, the court terminated the defendant's probation and sentenced him in the probation files to concurrent terms of three and one-half years of incarceration. He began to serve those sentences while awaiting resolution of the charges in the robbery and pistol possession files.

On May 15, 2019, in the pistol possession file, the defendant pleaded guilty under the *Alford* doctrine to criminal possession of a pistol or revolver. Following a plea canvass, the court, *Cradle, J.*, sentenced the defendant to ten years of incarceration, two years of which were mandatory, execution suspended after three and one-half years, followed by three years of conditional discharge. The court, in response to a question by the defendant about jail credit, stated that the defendant could "get [his] jail credit for the time that [he had] been confined on bond on this matter." The order for jail credit was reflected on the mittimus.[5]

On October 29, 2020, as part of a plea agreement with the state and in order to resolve his remaining criminal charges on the robbery file, the defendant pleaded guilty under the *Alford* doctrine to robbery in the first degree and conspiracy to commit robbery in the first degree. As part of the plea agreement, the state agreed to enter a nolle prosequi on all remaining charges, including the charge of being a persistent dangerous felony offender. The court, *Brown, J.*, accepted the pleas following a thorough canvass during which the defendant repeatedly was advised of the terms of the agreed upon sentence, which was twelve years of incarceration, execution suspended after seven and one-half years, followed by five years of probation, which would run concurrently with all of the sentences he already was serving. On two separate occasions, following the court's recitation of the agreed upon sentence, the defendant verbally indicated that he understood the terms. During this proceeding, neither the defendant nor his counsel suggested that the plea agreement included a provision regarding jail credit. The matter was continued to January 28, 2021, for sentencing.

On that date, the defendant raised to the court, for the first time, his belief that he was entitled to certain presentence confinement credit in the present case. Specifically, after the court had given the defendant an opportunity to address the court, defense counsel indicated that he had a "few more comments." Counsel concluded those comments with the following: "The final thing that I would say is that there was discussion of making the sentence run with the other sentences. And I contacted records at [the Department of Correction (department)], and they instructed me that you can order a jail credit going back to those dates. And I have those dates for the court, if so inclined. The arrest date of August 17, 2018, through December 19, 2018, at which time [the defendant] bonded out. And then he was readmitted on February 20, 2019, and the jail credit can be ordered from then to [the present]." The prosecutor indicated in his response that presentence confinement credit "was not bargained for," meaning that the issue was not part of the plea agreement between the defendant and the state, and that the court's practice in the past had always been to "[defer] to the [department] with regard to the calculation of jail credit." The prosecutor also took the position that the defendant already had received "every single credit from . . . every judge who has sentenced him with regard to his violations of probation [and] the gun charges he picked up . . . ."

The court indicated its intent to impose a sentence at that time, stating: "So, there is an agreed upon sentence. I am going to impose that agreed upon sentence. I am also going to allow the department to impose whatever presentence credit the department feels is appropriate. You're obviously entitled to presentence credit. I'm going to let them make that determination. . . . I'm not going to do that on the record." At that time, the defendant interrupted and complained that he had been told that he would "receive all jail credit if [he] agree[d] to the [plea] deal." The prosecutor reiterated that the state had never made any representations regarding presentence confinement credit as part of the plea negotiations. At the request of defense counsel, the court continued the matter without imposing sentence to afford counsel additional time to consult with the defendant and to review his file.

The defendant subsequently filed a motion asking the court to order that presentence confinement credit be applied to the sentence imposed or, alternatively, to allow him to withdraw his pleas. On February 18, 2021, the court conducted a hearing on the defendant's motion. During that hearing, defense counsel made clear that, although he had indicated to the defendant that he would pursue any available presentence confinement credit, "I did not tell him there was an agreement for jail credit. There was not, and I can't represent that there was." The court denied the defendant's motion

regarding presentence confinement credit, denied the defendant's request to withdraw his pleas, and sentenced the defendant, in accordance with the plea agreement, to a total effective term of twelve years of imprisonment, suspended after seven years and one-half years, and five years of probation to run concurrently with all other sentences the defendant was then serving. The defendant subsequently filed the present appeal.

I

The defendant first claims that the court improperly determined that it lacked the authority to award him presentence confinement credit at sentencing pursuant to § 18-98d. The defendant argues that a sentencing court has both the inherent authority and broad discretion to structure its sentences within statutory limits, and that this authority necessarily must include the discretion to account for presentence confinement credit that the court determines to be appropriate. The state responds that the court's conclusion that it lacked authority to calculate and order presentence confinement credit at the time of sentencing comports with statutory law.[6] We agree with the state.

No appellate court has answered unequivocally whether, in crafting an appropriate and legal sentence, a sentencing court has the authority to order presentence confinement credit to which a defendant claims he is entitled. See *Gooden* v. *Commissioner of Correction*, 169 Conn. App. 333, 339–40 n.3, 150 A.3d 738 (2016) (whether sentencing authority includes ability to award jail credit at time of sentencing is open issue). In answering that question, we do not start with an entirely blank canvas. Rather, we are guided by the relevant statute as well as our prior decisional law.[7]

A defendant's entitlement to, and the application of, presentence confinement credit is governed by § 18-98d. Because the periods of confinement at issue in the present case occurred after July 1, 1981, but prior to October 1, 2021, the applicable portion of § 18-98d is subparagraph (a) (1) (A), which provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, and prior to October 1, 2021, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (i) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (ii) the provisions of this section shall only apply to a person for whom the existence

of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. . . ."

Of particular relevance to the issue now before us is subsection (c) of § 18-98d, which provides: "The Commissioner of Correction shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) of this section in excess of the sentence actually imposed." Thus, subsection (c) expressly and unequivocally mandates that it is the Commissioner of Correction (commissioner) who is responsible for ensuring that a defendant receives all presentence confinement credit due under the statute and, importantly, that any such credit be applied as a "reduction in such person's sentence." We construe this language to mean that any applicable credit is to be calculated and later applied toward whatever sentence actually was imposed by the court and not by reducing the sentence prior to its imposition. This construction is consistent with our Supreme Court's statement in *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 950 A.2d 1220 (2008), that the petitioner in that case had made an "erroneous assumption that, pursuant to § 18-98d, the petitioner [was] entitled to have . . . presentence confinement credit applied to his sentences in such a manner as to actually advance his release date from prison. . . . [Section] 18-98d does not entitle the petitioner to that treatment but merely confers on him a right to have any days spent in presentence confinement applied once, upon imposition, to reduce the sentences imposed." (Emphasis omitted.) Id., 830. In other words, presentence confinement credit is not a part of a sentence; it is a calculation of the amount of credited time a defendant already has served toward completing that sentence.

Although it is true that § 18-98d contains no language that explicitly bars a sentencing court from awarding presentence confinement credit, we previously have stated that "[o]ur courts have clearly established that presentence [confinement] credit is a creature of statute . . . ." (Internal quotation marks omitted.) *State* v. *Deshawn D.*, 136 Conn. App. 373, 380, 44 A.3d 907 (2012). If the legislature had wanted to authorize sentencing courts to calculate and apply presentence confinement credit as part of their sentencing function, it presumably could have included express language granting such authority and/or responsibility. Furthermore, we agree

with the state that "[i]t would defy reason and logic to allow trial courts unfettered discretion to order presentence confinement credit, yet regulate the department . . . in carrying out the administrative function of calculating and applying such credit."

Our construction of § 18-98d as granting the sole responsibility and authority to the commissioner to calculate and apply presentence confinement credit is further buttressed by a number of practical considerations. First, as the present case demonstrates, it often will be difficult for a court to determine whether and to what extent a defendant may be statutorily entitled to jail credit. The record before a sentencing court may not reflect to what extent a defendant with multiple criminal files has already received jail credit in another file. The sentencing court, without conducting an investigation, has no way of verifying the precise dates that a defendant entered a given facility or when he may have been released on bond. The necessary records to make such determinations generally are not readily available to a court at the time of sentencing. Moreover, the court reasonably should not rely on factual representations made by counsel, who themselves may not have accurate or complete information necessary to calculate a defendant's entitlement to jail credit. The information necessary to make an accurate calculation regarding presentence confinement credit is in the hands of the department, and, thus, as recognized by the legislature in enacting § 18-98d, the commissioner is the proper party to "ensur[e] that each person to whom the provisions of [§ 18-98d] apply receives the correct reduction in such person's sentence . . . ." General Statutes § 18-98d (c).

Although the defendant acknowledges subsection (c) of § 18-98d and its clear designation of the commissioner as the authority charged with applying presentence confinement credit, he nonetheless urges us to hold that the sentencing court, which has broad discretion to craft and impose sentences, also can directly account for presentence confinement credit as a part of the sentencing process and that the court's refusal to do so in the present case was an abuse of discretion. We do not find any of the defendant's arguments in support of this proposition persuasive.

First, the defendant argues that, just as a sentencing court typically has the discretion and authority to determine whether sentences will run concurrently or consecutively, it has the inherent authority to award presentence credit as it sees fit. We do not consider this an apt analogy. "Determining whether two sentences will be concurrent or consecutive is part of the judicial function of imposing sentences upon a convict and is a matter for the determination of the court." (Internal quotation marks omitted.) *State* v. *Banks*, 59 Conn. App. 145, 150, 763 A.2d 1046 (2000). Further, this authority

has long been recognized at common law and is expressly authorized by statute. See General Statutes § 53a-37. By contrast, presentence confinement credit is strictly a creature of statute, and any right to such credit is a "matter of legislative grace . . . ." *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 833, 860 A.2d 715 (2004). As such, "the manner in which [presentence confinement credits] are applied [toward] a sentence and the proscription against double counting are properly determined by the legislature." Id. As we have already indicated, the legislature has expressly placed the authority to apply presentence confinement credit in the hands of the commissioner.

Second, the appellate cases relied on by the defendant to argue that a sentencing court has the authority and/or discretion to award presentence confinement credit are not direct criminal appeals like the present case but appeals from decisions on petitions for writs of habeas corpus that address various claims that the commissioner—not a sentencing court—either has miscalculated or misapplied presentence confinement credit. Such decisions clearly are inapposite to the issue before us. For example, the defendant states that *James* v. *Commissioner of Correction*, 327 Conn. 24, 29, 170 A.3d 662 (2017), "is a quintessential example of the appropriate exercise of a *trial court's discretion.*" (Emphasis added.) But *James* contains no relevant discussion pertaining to whether a sentencing court has the authority to calculate and award presentence confinement credit. The sole issue in *James* was whether the *commissioner* properly calculated and applied such credit. The defendant cites no appellate authority holding that a sentencing court has the discretion to calculate and apply presentence confinement credit at sentencing.

Finally, we are aware that trial courts in this state have differing views about how to address issues concerning presentence confinement credit raised at sentencing. Some trial courts, consistent with the position that we have taken, regularly refuse to address jail credit as part of sentencing because they conclude that it is not "within the power of a Superior Court judge to do so." *Gooden* v. *Commissioner of Correction*, supra, 169 Conn. App. 339 n.3.[8]

Other sentencing courts have taken the view that they have authority to order that a defendant be given jail credit by placing an order to that effect on the judgment mittimus. The court that sentenced the present defendant in the pistol possession file seemingly took this approach. In light of our conclusion that the authority to calculate and apply presentence confinement credit lies, at least in the first instance,[9] with the commissioner, any such notation would not be binding on the commissioner.

Still other courts have endeavored to avoid the issue

of authority to order presentence confinement credit by adjusting the actual sentence that it imposes, thereby reducing the sentence in an amount roughly equal to the presentence confinement credit sought. By way of example, a court that is considering the acceptance of a plea agreement entered into between the state and a defendant may choose to resolve the defendant's request for an order for presentence confinement credit by way of a different sentencing structure that reduces the previously agreed upon sentence offered by the state by some additional amount to assuage the defendant without overstepping the court's authority regarding such credit. Whether this approach is a viable option, however, will depend on the particulars of the plea agreement with the state and the charges pending against the defendant.[10]

In sum, the commissioner, rather than the sentencing court, is the proper authority to determine a defendant's eligibility for presentence confinement credit and to apply such credit against a defendant's sentence after the sentence is imposed. The defendant in the present case cannot demonstrate that the sentencing court improperly concluded that it lacked the authority to account for his claim to presentence confinement credit when imposing sentence or that it abused any discretion it had by refusing to note on the mittimus that the commissioner should award the defendant any such credit, which the commissioner already had a statutory obligation to do under § 18-98d. If the defendant believes that the commissioner has not properly applied all presentence confinement credit to which he is statutorily entitled toward the completion of his sentence, the defendant can raise this issue in an appropriate habeas action.

## II

The defendant next claims that the court improperly accepted his guilty pleas, and later denied his motion to withdraw his pleas, because there never was a "meeting of the minds" regarding the terms of the pleas. The state responds, inter alia, that the terms of the plea agreement, as reflected in the record, were understood by all parties and did not include presentence confinement credit.[11] We agree with the state and, accordingly, reject the defendant's claim.

In *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), the United States Supreme Court stated that "the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Moreover, "[t]he validity of plea bargains

depends on contract principles. . . . Thus, [p]rinciples of contract law and special due process concerns for fairness govern our interpretation of plea agreements." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 7–8, 895 A.2d 771 (2006). It is axiomatic that, to form a binding and enforceable contract, there must be a mutual assent, or a " 'meeting of the minds' " between the contracting parties. *Computer Reporting Service, LLC* v. *Lovejoy & Associates, LLC*, 167 Conn. App. 36, 44, 145 A.3d 266 (2016). Because the existence of a contract is a factual determination made by the court, our review is limited to whether the court's decision was clearly erroneous in light of the existing evidence. See, e.g., *Senco, Inc.* v. *Fox-Rich Textiles, Inc.*, 75 Conn. App. 442, 445, 816 A.2d 654, cert. denied, 263 Conn. 916, 821 A.2d 770 (2003).

The defendant's claim falters on the fact that the defendant has failed to direct us to any evidence that tends to support his claim. To the contrary, the record before us reflects that the plea agreement negotiated between the state and the defendant, in fact, did not include any offer or acknowledgment by the state regarding presentence confinement credit.[12] Defense counsel acknowledged on the record that the plea agreement between the state and the defendant did not include any agreement between the parties regarding presentence confinement credit. The prosecutor concurred, indicating to the sentencing court that the presentence confinement credit requested by the defendant had never been part of the plea bargaining discussions and that the defendant had been warned of the likelihood of his serving "dead time"[13] between sentencing in the other files and his sentencing in the present case. Moreover, defense counsel unequivocally indicated to the court that he had never explicitly told the defendant that the state's offer would be reduced at sentencing by jail credit but only that he would make an effort to have the court order presentence confinement credit at the time of sentencing. Finally, and most significantly, during his initial plea canvass, the defendant acknowledged more than once that he understood that the agreed upon sentence was for a term of incarceration of twelve years of imprisonment, suspended after seven and one-half years, with five years of probation. That is the sentence that was bargained for, and that is the sentence that the defendant in fact received. In short, there is simply nothing in the record before the sentencing court or this court to support the defendant's assertion that there was no meeting of the minds with respect to the terms of the plea agreement such that the court should have found the plea agreement unenforceable. Accordingly, the defendant's claim fails.

### III

Finally, the defendant claims that the court improperly violated his constitutional rights by failing to advise

him during the plea canvass that his guilty pleas would operate as a waiver of his constitutional right to a jury trial. Although the defendant acknowledges that the court asked him as part of the canvass whether he understood that, by pleading guilty, he was waiving his right to *a trial*, the defendant argues that the court never clearly indicated that this waiver included giving up his right to a *jury trial*, thus rendering the plea canvass constitutionally invalid. We disagree.

As a preliminary matter, the defendant concedes that this claim was not properly preserved because he never raised it as an issue in his motion to withdraw his pleas. He nevertheless requests review pursuant to *Golding*[14] or the plain error doctrine. See Practice Book § 60-5.[15] We conclude that, although the defendant's claim satisfies the first and second prongs of *Golding* because the record is adequate for review and the claim is of constitutional magnitude, the defendant is not entitled to reversal of the judgment under the third prong of *Golding* or the plain error doctrine because he cannot establish that the court's canvass was improper, let alone constitutionally insufficient.

"Several federal constitutional rights [as enunciated in *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)] are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination . . . [s]econd, is the right to trial by jury . . . [t]hird, is the right to confront one's accusers. . . .[16] Further, under the Connecticut rules of practice, a trial judge must not accept a plea of [guilty or] nolo contendere without first addressing the defendant personally and determining that the plea is voluntarily made under Practice Book § [39-20] and that the defendant fully understands the items enumerated in Practice Book § [39-19]." (Citation omitted; footnote added; internal quotation marks omitted.) *State* v. *Badgett*, 200 Conn. 412, 417, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

In *State* v. *Badgett*, supra, 200 Conn. 419–20, our Supreme Court rejected a claim that was nearly identical to the one now raised by the defendant. Specifically, the defendant in *Badgett*, who had entered conditional pleas of nolo contendere, raised as his "principal constitutional claim" on appeal that the court had not properly informed him that his plea operated as a waiver of his right to a trial by jury because, during his plea canvass, the court asked him only if he understood that he was "giving up [his] right to trial at this present time" without making any specific reference to a right to a "jury trial." (Internal quotation marks omitted.) Id., 418–19. That omission, the defendant argued, "prevented him from making a knowing waiver of the right and, therefore, rendered his plea constitutionally defective." Id., 419. Our Supreme Court stated that, although it did "not

condone the court's failure expressly to reference the right to a 'jury' trial, we conclude that the inquiry was constitutionally sufficient under the circumstances of th[e] case." Id. In reaching that conclusion, our Supreme Court reasoned "that the trial court's express mention of waiver of the right to *trial*, combined with the defendant's prior election for a jury trial, his experience with criminal proceedings and apparently adequate representation by counsel" rendered the canvass constitutionally sufficient. (Emphasis in original.) Id., 420.

Following *Badgett*, this court similarly has rejected claims like the one advanced by the defendant in the present case, provided that the record contained similar indicia from which to infer that the defendant understood that his waiver of his right to a trial meant the right to a *jury* trial. See *State* v. *Lage*, 141 Conn. App. 510, 525, 61 A.3d 581 (2013) (court's canvass was constitutionally sufficient despite court's failure to use modifier "jury" in informing defendant that guilty plea would waive his right to trial); *State* v. *McElyea*, 40 Conn. App. 60, 63, 668 A.2d 742 (same), cert. denied, 236 Conn. 920, 674 A.2d 1327 (1996). But see *State* v. *Smith*, 83 Conn. App. 411, 416–17, 849 A.2d 918 (acknowledging that, "[a]s a general matter . . . the court's failure to use the term jury trial does not in and of itself render a plea involuntary" but declining to follow *Badgett* because defendant "was arraigned, entered a plea and was sentenced on the same day . . . was not represented by counsel, and at no point in the proceeding did he elect a jury trial or show any understanding that he had a right to one" (citations omitted; internal quotation marks omitted)), cert. denied, 271 Conn. 940, 861 A.2d 516 (2004).

Under the facts of the present case, in which the defendant was represented by counsel and had elected a jury trial as part of his initial plea of not guilty, *Badgett* and its progeny are applicable and binding on this court. The defendant duly recognizes this, articulating the following in his brief: "The defendant acknowledges a line of case law from [the Appellate Court] and the Supreme Court in which representation by counsel has been held adequate to make up for a defective plea canvass. This line of case law is at variance with federal case law interpreting this federal constitutional right *but is controlling*. This issue is raised for the sake of future review." (Emphasis added.)

"[I]t is axiomatic that this court, as an intermediate body, is bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 148 Conn. App. 641, 645, 85 A.3d 1240, cert. denied, 311 Conn. 945, 90 A.3d 976, cert. denied

sub nom. *Anderson* v. *Dzurenda*, 574 U.S. 883, 135 S. Ct. 201, 190 L. Ed. 2d 155 (2014). Similarly, it is the policy of this court that one panel of this court cannot overrule or decline to follow a prior panel's holding. See, e.g., *State* v. *White*, 215 Conn. App. 273, 304–305, 283 A.3d 542 (2022). We are unpersuaded by the defendant's attempts to distinguish the present case from *Badgett* and its progeny and, thus, must leave for our Supreme Court the defendant's question of whether courts in this state should implement a new and more rigorous standard for evaluating the sufficiency of a plea canvass.[17] Because the defendant's claim fails as a matter of settled law, he cannot satisfy the third prong of *Golding* or the more stringent standard for relief pursuant to the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] The defendant was convicted in the judicial district of Ansonia-Milford in Docket No. CR-14-0086982 of assault in the third degree in violation of General Statutes § 53a-61 and criminal violation of a protective order in violation of General Statutes § 53a-223, and in Docket No. CR-15-0158739 of criminal violation of a protective order in violation of § 53a-223. It is axiomatic that we may take judicial notice of the defendant's various prior criminal files to the extent that doing so aids our consideration of the claims raised on appeal. See *Echeverria* v. *Commissioner of Correction*, 193 Conn. App. 1, 3 n.1, 218 A.3d 1116, cert. denied, 333 Conn. 947, 219 A.3d 376 (2019).

[3] See *State* v. *Garvin*, 242 Conn. 296, 699 A.2d 921 (1997). "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 7, 895 A.2d 771 (2006).

[4] The prosecutor provided the court with the following factual basis for the defendant's pleas related to the robbery. On August 16, 2018, at approximately 5:18 a.m., the West Haven police were called to the Econo Lodge motel on Highland Street in West Haven. At that time, they came into contact with the victim, a New York resident who was visiting a local acquaintance, Jennifer Torres. Torres came to the victim's motel room with another woman. Shortly after arriving, Torres excused herself from the room, following which two men, one of whom was the defendant, came in. One of the men was armed with a handgun and proceeded to pistol-whip the victim. Both men ransacked the room, stealing, among other things, a watch and some money. After the four individuals left, the victim contacted the police. The police, who were familiar with Torres, began an investigation pursuant to which they learned the identity of her companions. The police then went to a location that those individuals were known to frequent and were waiting outside when a car pulled up. Several of the individuals suspected to be involved in the robbery were in the car, which was being operated by the defendant. When the police attempted to stop the car, a pursuit ensued, which the police terminated at some point due to public safety concerns. The car later was located in New Haven. The New Haven police then came into contact with the defendant, who was, by then, known to be a suspect in the West Haven robbery. The defendant threw down a firearm that he was carrying, dropping it in a yard. The firearm was recovered and met the description of the gun with which the robbery victim claimed he was struck. On the basis of statements given by several individuals, including some of the defendant's coconspirators, which were corroborated by surveillance video from the motel, the police learned that the coconspirators had hatched a plan to rob the victim by having the women gain entry to the motel room and having the men wait outside and, at the appropriate time, enter the motel room and rob the victim.

[5] "[A] judgment mittimus is . . . a clerical document by virtue of which a person is transported to and rightly held in prison." (Internal quotation

marks omitted.) *State* v. *Montanez*, 149 Conn. App. 32, 34 n.1, 88 A.3d 575, cert. denied, 311 Conn. 955, 97 A.3d 985 (2014).

[6] The state also argues that the defendant cannot prevail on this claim because he was not legally entitled to the credit that he claims the court failed to award and because the plea agreement never contemplated deducting presentence confinement credit from the agreed upon sentence. Although we will briefly discuss the latter of these arguments in part II of this opinion, we need not address the former argument. Our conclusion that a sentencing court lacks the authority to order presentence confinement credit at sentencing renders it unnecessary to resolve the state's argument that the defendant was not entitled to any such credit in the first instance. As set forth in this opinion, whether the defendant is entitled to presentence confinement credit must be determined, not at sentencing, but by the Commissioner of Correction (commissioner) upon review of all relevant records and in accordance with the application of the pertinent statutes and the policies and procedures of the department. Only after such a determination is made will the issue be ripe for judicial review by way of a petition for a writ of habeas corpus. See *State* v. *Riddick*, 194 Conn. App. 243, 244–45, 220 A.3d 908 (2019) ("petition for a writ of habeas corpus, rather than a motion directed at the sentencing court, is the proper method to challenge the [commissioner's] application of presentence confinement credit"); *State* v. *Carmona*, 104 Conn. App. 828, 833, 936 A.2d 243 (2007) (habeas proceeding, not motion to correct illegal sentence, is proper method to raise claim concerning presentence confinement credit), cert. denied, 286 Conn. 919, 946 A.2d 1249 (2008).

[7] Generally, "[w]e defer to the broad authority that legislatures possess in determining the types and limits of punishment for crimes." *State* v. *Heinemann*, 282 Conn. 281, 311, 920 A.2d 278 (2007). To the extent that the defendant suggests in his argument on appeal that the legislature's decision to place the authority to calculate and apply presentence confinement credit exclusively within the hands of the department rather than sentencing courts somehow implicates the doctrine of separation of powers, this notion has been rejected by our Supreme Court. See *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 826–29, 950 A.2d 1220 (2008).

[8] In *Gooden*, the petitioner had been sentenced in accordance with a plea agreement that included an agreed upon sentence of ten years of incarceration followed by five years of special parole. In the subsequent habeas action, he claimed that his counsel was ineffective because, inter alia, he failed to ask the sentencing court to account for 286 days of jail credit by reducing his time to serve to nine years and seventy-nine days. The habeas court rejected the claim, indicating that the sentencing judge would not have awarded jail credit even if counsel had asked. See *Gooden* v. *Commissioner of Correction*, supra, 169 Conn. App. 342–43.

[9] To be clear, we hold only that a sentencing court lacks authority to calculate and award presentence confinement credit. This should not be misunderstood as suggesting that a habeas court, when adjudicating a petition for a writ of habeas corpus in which it is claimed that the commissioner acted improperly with respect to presentence confinement credit, lacks authority to craft an appropriate remedy.

[10] This is because the state may have agreed to nolle charges in reaching the agreed upon sentence. Although a sentencing court has the authority to structure a sentence differently than that agreed to in a plea deal between the defendant and the state, unless the state agrees otherwise, the court may do so only if the defendant is prepared to enter a plea to all charges in the information, including any that the state had agreed to nolle as part of its own plea agreement with the defendant. If the nolled charges carry a statutory minimum sentence in excess of the previously agreed upon time to serve, any additional reduction in the agreed upon sentence by the sentencing court, acting alone, would not be legally possible. For example, in the present case, one of the charges that the state had agreed to nolle was the home invasion charge, which carries a mandatory minimum sentence of ten years to serve. See General Statutes § 53a-100aa (c). The court could not unilaterally have structured a sentence that was less than the seven and one-half years to serve that the state previously had agreed to unless the state also agreed to nolle the home invasion charge.

[11] The state also argues that the credit to which the defendant claimed he was entitled had been applied against the sentence he received for the New Haven file. We need not address this assertion because we agree that the plea deal at issue did not include an accounting for any presentence confinement credit.

[12] Given our current holding that the authority to calculate and apply presentence confinement credit lies exclusively with the commissioner, it is unlikely that the state has any authority to directly negotiate a plea bargain that addresses presentence confinement credit.

[13] "[D]ead time is prison parlance for presentence confinement time that cannot be credited because the inmate is a sentenced prisoner serving time on another sentence." (Internal quotation marks omitted.) *Bagalloo* v. *Commissioner of Correction*, 195 Conn. App. 528, 531 n.2, 225 A.3d 1226, cert. denied, 335 Conn. 905, 226 A.3d 707 (2020).

[14] *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), provides that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 239–40.

[15] Practice Book § 60-5 provides in relevant part: "The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." It is axiomatic, however, that "[t]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so [patent and readily discernible from the record] that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017).

[16] The same rights are guaranteed under our state constitution in article first, § 8, as amended by article seventeen of the amendments. See *State* v. *Suggs*, 194 Conn. 223, 227 n.3, 478 A.2d 1008 (1984).

[17] We note that our Supreme Court previously has declined an invitation to do so. See *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 13, 761 A.2d 740 (2000) ("The petitioner urges this court to adopt a more stringent requirement for jury trial waivers based upon cases from jurisdictions other than Connecticut. We decline, however, to mandate more stringent requirements for jury trial waivers in plea canvasses.").