******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MARCUS HURDLE
## (SC 20827)

McDonald, D'Auria, Mullins, Ecker, Alexander and Dannehy, Js.*

*Syllabus*

The defendant appealed, on the granting of certification, from the judgment of the Appellate Court, which had affirmed his conviction, following a guilty plea, of robbery in the first degree and conspiracy to commit robbery in the first degree. The defendant claimed, inter alia, that the Appellate Court had incorrectly upheld the trial court's conclusion that it lacked authority under the statute (§ 18-98d) governing presentence confinement credit to direct the commissioner of correction to apply such credit to the defendant's sentence. *Held*:

This court concluded that § 18-98d does not confer exclusive authority on the commissioner to calculate and apply presentence confinement credit and that a trial court has discretionary authority to include on a judgment mittimus an order directing the commissioner to apply presentence confinement credit, in accordance with § 18-98d (a) (1), to a sentence that the court has imposed.

This court reversed the judgment of the Appellate Court insofar as that court upheld the trial court's conclusion that it did not have discretion to direct the commissioner to apply certain presentence confinement credit to the defendant's sentence and ordered the Appellate Court to remand the case to the trial court so that it could exercise its discretion, in the first instance, with respect to the presentence confinement credit issue.

The Appellate Court correctly concluded that the defendant's plea agreement did not include an agreement that he would receive presentence confinement credit for the time that he was incarcerated and serving sentences in connection with two criminal cases unrelated to the present case, as the record contained no evidence that would support such a finding.

There was no merit to the defendant's claim that the plea agreement was void on the ground that there was no meeting of the minds on the issue of presentence confinement credit, because, although the record supported the conclusion that the defendant subjectively believed that he would receive

---

\* This case originally was argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Ecker, Alexander, and Dannehy. Thereafter, Chief Justice Robinson retired from this court and did not participate in the consideration of this case.

The listing of justices reflects their seniority status on this court as of the date of oral argument.

such credit under that agreement, that subjective belief was wholly unreasonable.

Argued April 25—officially released December 10, 2024

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of home invasion, robbery in the first degree, conspiracy to commit robbery in the first degree and criminal possession of a firearm, and, in the second part, with being a persistent dangerous felony offender and with committing an offense while on release, brought to the Superior Court in the judicial district of Ansonia-Milford, where the defendant was presented to the court, *Brown, J.*, on pleas of guilty to robbery in the first degree and conspiracy to commit robbery in the first degree; thereafter, the court, *Brown, J.*, denied the defendant's request for presentence confinement credit and the defendant's motion for reconsideration or to withdraw the pleas, and rendered judgment in accordance with the pleas, and the defendant appealed to the Appellate Court, *Alvord*, *Prescott* and *Moll, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings*.

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Linda F. Rubertone*, senior assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, and *Howard S. Stein*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. The principal issue in this certified appeal is whether a trial court has the authority under

General Statutes § 18-98d[1] to direct the commissioner of correction (commissioner) to apply presentence confinement credit, also known as jail credit, for specific dates to a defendant's sentence on the judgment mittimus.[2] Upon our grant of his petition for certification,[3] the defendant, Marcus Hurdle, appeals from the judgment of the Appellate Court affirming his conviction, rendered in accordance with a plea agreement, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a). *State* v. *Hurdle*, 217 Conn. App. 453, 476, 288 A.3d 675 (2023). On appeal, the defendant claims that the Appellate Court incorrectly concluded that (1) under subsection (c) of § 18-98d, the trial court lacked authority to direct the commissioner to apply presentence confinement credit, and (2) there was no basis for allowing the defendant to withdraw his guilty

[1] We note that the legislature amended subdivision (1) of § 18-98d (a) in 2021 to divide it into subparagraphs (A) and (B), with the existing language of subsection (a) (1) contained in subparagraph (A), applicable to offenses "committed on or after July 1, 1981, and prior to October 1, 2021," and the new subparagraph (B) applicable to offenses "committed on or after October 1, 2021 . . . ." Public Acts 2021, No. 21-102, § 21. See footnote 19 of this opinion for further discussion of this statutory change. The 2021 amendment to § 18-98d does not affect the principal issue in this appeal, which turns on our interpretation of subsection (c) of that statute. In the interest of simplicity, all references in this opinion to § 18-98d are to the current revision of the statute.

[2] The mittimus is "a clerical document by virtue of which a person is transported to and rightly held in prison. . . . [A] mittimus after conviction in a criminal case is similar to an execution after judgment in a civil case; it is final process and carries into effect the judgment of the court." (Citations omitted; internal quotation marks omitted.) *Commissioner of Correction* v. *Gordon*, 228 Conn. 384, 392, 636 A.2d 799 (1994).

[3] We granted the defendant's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the trial court lacked authority to award the defendant presentence confinement credit at the time of sentencing?" And (2) "[d]id the Appellate Court correctly conclude that the plea agreement did not include presentence confinement credit?" *State* v. *Hurdle*, 346 Conn. 923, 295 A.3d 420 (2023).

pleas because the plea agreement did not include some of the presentence confinement credit that the defendant had sought from the trial court. We conclude that the trial court has the discretionary authority under § 18-98d to include on the mittimus an order directing the commissioner to award presentence confinement credit in accordance with subsection (a) (1) of that statute for specific dates when the defendant was confined because he was unable to obtain bail or because bail was denied. We further conclude that the Appellate Court correctly determined that the plea agreement did not include an agreement that the defendant would receive presentence confinement credit for the time he spent serving sentences in connection with different files, and, for that reason, the defendant was not entitled to withdraw his plea. Accordingly, we reverse in part the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. In January, 2016, the defendant was sentenced in the judicial district of Ansonia-Milford to a total effective sentence of five years of incarceration, execution suspended after nine months, and three years of probation, in two criminal cases unrelated to the present case (Ansonia-Milford cases). In July, 2018, the trial court, *McShane, J.*, in the Ansonia-Milford case accepted the defendant's admission that he had violated his probation under a *Garvin* agreement[4] and released him so that he could attend a substance abuse treatment program.

While awaiting sentencing for violation of probation in the Ansonia-Milford cases, the defendant participated

---

[4] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by the defendant's violation of a condition of the agreement." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 3 n.1, 895 A.2d 771 (2006); see *State* v. *Garvin*, 242 Conn. 296, 299–302, 699 A.2d 921 (1997).

in a robbery in West Haven, which formed the basis for the charges in the present case. When the police encountered the defendant and his three coconspirators several hours later, the defendant engaged the officers in a car chase in New Haven. Later that same day, New Haven police saw the defendant disposing of a firearm matching the description of the gun used in the West Haven robbery and arrested him. As a result of the events in New Haven, the defendant was charged in the judicial district of New Haven with interfering with a police officer and criminal possession of a pistol or revolver (New Haven case). He was arraigned in the New Haven case the next day, August 17, 2018, and was detained because he was unable to post bond.

While detained in connection with the New Haven case, the defendant was served with an arrest warrant in the present case. Because the robbery giving rise to the charges in the present case took place in West Haven, the state charged the defendant in the judicial district of Ansonia-Milford with multiple offenses, including home invasion and robbery in the first degree; the state also filed a part B information charging the defendant with being a persistent dangerous felony offender and with committing an offense while on release. The trial court, *Wilkerson Brillant, J.*, set a $300,000 bond at arraignment in the present case and raised the bond for the earlier violation of probation charges in the Ansonia-Milford cases, so that the defendant would receive "credit for any time that he [had been] incarcerated at [that] point."

On October 26, 2018, the trial court appointed a special public defender for the defendant and confirmed that bonds had been set in all of his cases. The defendant pleaded not guilty to the charges in the present case and elected a jury trial. On December 19, 2018, the defendant was released from the custody of the commissioner after posting bond.

On February 13, 2019, the defendant returned to court for sentencing on his violation of probation charges in the Ansonia-Milford cases. Judge McShane advised the defendant that he would *not* be earning presentence confinement credit toward any sentence in the present case or the New Haven case while he was incarcerated and serving a sentence on his violation of probation in the Ansonia-Milford cases. The defendant twice affirmed that he understood, and his sentencing was continued to February 20, 2019. On that date, the defendant arrived at court late and appeared to be intoxicated, prompting the court to raise his bond, to detain him, and to continue that matter to the following week. On February 26, 2019, the court terminated the defendant's probation in the Ansonia-Milford cases and sentenced him to concurrent terms of three and one-half years of incarceration. Thereafter, the state and the defendant attempted to negotiate a global resolution of the remaining charges but failed to reach an agreement.

On May 15, 2019, the defendant pleaded guilty under the *Alford* doctrine[5] to the charge of criminal possession of a pistol or revolver in the New Haven case. He was sentenced to ten years of incarceration, execution suspended after three and one-half years, followed by a three year conditional discharge. When the defendant asked whether he would receive credit in the New Haven case for his presentence confinement on those charges, the trial court, *Cradle, J.*, stated that he would receive credit "for the time that [he had] been confined on bond [in] this matter," specifically, from August 17 through December 19, 2018, and from February 20 through May 15, 2019—roughly seven months in total.[6]

---

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] The defendant was serving the sentence for violation of probation in the Ansonia-Milford cases from February 26 through May 15, 2019, and, therefore, his confinement for that period of time was not the result of his inability to post bond in the New Haven case.

The court's order for specific jail credit was noted on the judgment mittimus.

In November, 2019, the defendant hired a private attorney, James R. Hardy II, to represent him in the present case. The proceedings in the present case were subsequently delayed by Hardy's multiple requests for continuances. On March 10, 2020, the trial court, *Brown, J.*,[7] marked over a hearing on the defendant's motion for bond reduction. Later that same day, Governor Ned Lamont declared a state of emergency throughout the state in response to the COVID-19 pandemic. On March 19, 2020, the governor ordered all noncritical court operations to be suspended. See Executive Order No. 7G (March 19, 2020).

On September 10, 2020, the trial court held a virtual hearing on the defendant's motion for bond reduction in the present case.[8] By that time, the defendant had hired Attorney Michael Brown to represent him in place of Hardy. The trial court granted the motion for bond reduction and then reminded the parties that, despite wanting to proceed to trial, "we can't do that right now," because of the ongoing suspension of noncritical court proceedings.

On October 29, 2020, the parties reached a plea agreement in the present case. Pursuant to that agreement, the defendant entered guilty pleas under the *Alford* doctrine to robbery in the first degree and conspiracy to commit robbery in the first degree. In exchange, the state agreed to enter a nolle prosequi on the remaining charges. The agreement was for a sentence of twelve years of incarceration, execution suspended after seven

---

[7] All subsequent references to the trial court in this opinion are to Judge Brown.

[8] The defendant was serving his sentence for violation of probation in the Ansonia-Milford cases and sought a reduction in the bond in the present case so that he could attend a veterans treatment program in prison.

and one-half years, and five years of probation. The plea deal included an agreement that the sentence in the present case would run concurrently with the sentences in the Ansonia-Milford and New Haven cases. The trial court accepted the pleas following a thorough canvass during which the defendant affirmed that he understood the terms of the agreement.

At the sentencing hearing on January 28, 2021, Brown raised the question of jail credit in the present case, stating: "[T]here was discussion of making the sentence run with the other sentences. And I contacted records at [the Department of Correction (department)], and they instructed me that you can order a jail credit going back to those dates. And I have those dates for the court, if so inclined. The arrest date of [August 17, 2018] through December 19, 2018, at which time [the defendant] bonded out. And then he was readmitted on February 20, 2019, and the jail credit can be ordered from then to here."

The prosecutor objected on the ground that presentence confinement credit had not been part of the plea agreement in the present case and that the court's practice had been to "always [defer] to the [commissioner] with regard to the calculation of jail credit." The prosecutor further argued that, if the defendant's time served were to become "dead time,"[9] namely, time that would not be credited toward his sentence for robbery in the present case—it was his own fault. The prosecutor stated: "It was a calculated decision by [the defendant] and each and every one of his previous attorneys to dispose of the violation of probation [charges in Ansonia-Milford], [and] to dispose of the gun charge in New

---

[9] "[D]ead time is [informal] parlance for presentence confinement time that cannot be credited because the inmate is a sentenced prisoner serving time [in connection with] another sentence." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 179 Conn. App. 160, 163 n.2, 178 A.3d 1079 (2018).

Haven where he began serving dead time instead of trying to resolve these things in a global fashion. He was warned by the court. He was warned by the state that these were all bad decisions.''

The trial court then ruled: "I am going to impose [the] agreed on sentence. I am also going to allow the [commissioner] to impose whatever presentence credit [he] feels is appropriate. *You're obviously entitled to presentence credit. I'm going to let* [*the commissioner*] *make that determination.* . . . I'm not going to do that on the record." (Emphasis added.) Following additional discussions about the defendant's claimed understanding that jail credit was integral to his decision to accept the plea agreement, the trial court granted Brown's request for a continuance to allow him to consult with the defendant and to review the file in greater depth.

Thereafter, the defendant filed a motion requesting the court to direct the commissioner to apply specific presentence confinement dates for jail credit on the judgment mittimus or, in the alternative, that he be allowed to withdraw his guilty pleas on the ground that he did not understand that he was not receiving presentence confinement credit as part of his plea agreement. When the sentencing hearing resumed on February 18, 2021, the court denied the defendant's motion regarding presentence confinement credit, stating that the court had no discretion under § 18-98d to grant it. The court also denied the defendant's request to withdraw his pleas, stating that the court had no reason to believe that the defendant did not understand the terms of the plea agreement. The court then sentenced the defendant in accordance with the plea agreement, and his sentence in the present case commenced on February 18, 2021.

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, among other things,

that the trial court incorrectly determined that it lacked the authority to award him presentence confinement credit at sentencing; *State* v. *Hurdle*, supra, 217 Conn. App. 461; and that the court improperly denied his motion to withdraw his guilty pleas because there was never a meeting of the minds regarding the terms of the plea agreement. Id., 469. The Appellate Court rejected those claims; id., 469, 471; and affirmed the trial court's judgment. Id., 476. This certified appeal followed. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the Appellate Court incorrectly determined that the commissioner has the exclusive authority to calculate and apply presentence confinement credit under § 18-98d (c). The defendant contends that the statute does not deprive the Superior Court of its inherent power as a court of general jurisdiction to set the parameters of a criminal sentence, which extends to the specific presentence confinement credit that the commissioner can apply to the sentence. See, e.g., *State* v. *Angel M.*, 337 Conn. 655, 668, 255 A.3d 801 (2020) ("[A] trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters. . . . In exercising its discretion, the trial court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." (Citation omitted; internal quotation marks omitted.)); see also General Statutes § 53a-37;[10] General

---

[10] General Statutes § 53a-37 provides in relevant part: "When multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and to the undischarged term or terms *in such manner as the court directs at the time of sentence.* The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed.

Statutes § 53a-38 (b) (1).[11] Guided in part by case law establishing the statutory nature of presentence confinement credit, we agree and conclude that § 18-98d (c) does not deprive trial courts of the authority to direct the commissioner on a judgment mittimus to apply specific presentence confinement dates.

Whether § 18-98d (c) confers exclusive authority on the commissioner to calculate and apply a defendant's presentence confinement credit is a question of statutory interpretation subject to plenary review. See, e.g., *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 647, 224 A.3d 147 (2020).

In accordance with General Statutes § 1-2z, we begin our analysis with the applicable text of § 18-98d. Section 18-98d (a) (1) (A) provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, and prior to October 1, 2021, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (i) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (ii) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail

. . ." (Emphasis added.)

[11] General Statutes § 53a-38 (b) provides in relevant part: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run  . . . ."

or the denial of bail is the sole reason for such person's presentence confinement . . . ." Subsection (c) of § 18-98d provides that the commissioner "shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) of this section in excess of the sentence actually imposed."

Subsections (a) and (c) of § 18-98d are silent as to whether trial courts have any role in determining whether a particular period of presentence confinement credit should be applied to a sentence. "It is well settled, however, that silence does not necessarily equate to ambiguity." (Internal quotation marks omitted.) *State* v. *Ramos*, 306 Conn. 125, 136, 49 A.3d 197 (2012). "Rather, [i]n determining whether legislative silence renders a statute ambiguous, we read the statute in context to determine whether the language is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id.

We conclude that the language of § 18-98d (c) providing that the commissioner "shall be *responsible* for *ensuring* that each person to whom the provisions of this section apply receives the *correct* reduction in such person's sentence"; (emphasis added); contains an inherent tension, revealed by dictionary definitions contemporaneous with the enactment of the statute, that renders the statute ambiguous as to whether the commissioner has exclusive authority to calculate and apply presentence confinement credit. Specifically, the definition of the word "responsible" suggests that the commissioner's authority in this area is, at the very least, primary. See Webster's Ninth New Collegiate Dictionary (1987) p. 1005 (defining "responsible" in relevant part as "liable to be called to account as the primary cause, motive, or agent"); see also The American Heritage Dictionary of the English Language (New College Ed.

1978) p. 1108 (defining "responsible" in relevant part as "[i]nvolving personal accountability or ability to act without guidance or superior authority," or "[b]eing the source or cause of something"). The definition of the operative verb "ensure" suggests, however, that the commissioner's role is, in fact, not exclusive. The verb "ensure" indicates that the legislature intended that the commissioner's role would be to *guarantee* that a defendant receives the presentence confinement credit to which he is entitled. See Webster's Ninth New Collegiate Dictionary, supra, p. 414 (defining "ensure" as "to make sure, certain, or safe: guarantee"). The related word "guarantee" strongly suggests that the commissioner's role and authority in the calculation and application of such credit is not necessarily exclusive, because service as a guarantor encompasses the "[assumption of] responsibility for the quality or execution of" that task by another party. The American Heritage Dictionary of the English Language, supra, p. 584. Further, the adjective "correct," in relation to the presentence credit awarded, suggests that the commissioner has a role in vetting credit initially awarded by a different party. See id., p. 299 (defining "correct" as "[f]ree from error or fault," or "[c]onforming to standards; proper"); see also Webster's Ninth New Collegiate Dictionary, supra, p. 293 (defining "correct" in relevant part as "conforming to an approved or conventional standard"). In this context, that other party reasonably could be understood to be the trial court, which would in turn be expected to provide accurate presentence confinement dates to the commissioner. Because this language reasonably may be understood to create uncertainty as to whether § 18-98d confers exclusive authority on the commissioner to determine the specific dates of presentence confinement for which the defendant should receive credit, we may consider extratextual sources, including the statute's legislative history. See General Statutes § 1-2z.

We first consider the legislative history of § 18-98d, beginning with its predecessor provisions, General Statutes §§ 18-97 and 18-98. See *James* v. *Commissioner of Correction*, 327 Conn. 24, 33–34, 170 A.3d 662 (2017) (concluding that §§ 18-97 and 18-98, "although not operative in [*James*], are still persuasive authority in determining the overall intent of granting presentence confinement credit"). In its 1967 report to the legislature, the Commission to Revise the Criminal Statutes recommended that, "[i]n imposing sentence of imprisonment, the court may provide that the term imposed on a person shall be credited with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence." Report of the Commission to Revise the Criminal Statutes (1967) p. 14. Later that year, the legislature enacted No. 549, § 15, of the 1967 Public Acts, codified at General Statutes (Rev. to 1968) § 18-97, and No. 869 of the 1967 Public Acts, codified at General Statutes (Rev. to 1968) § 18-98, which governed the application of presentence confinement credit before the enactment of § 18-98d in 1980 and required the commissioner to grant such credit.[12] The

---

[12] General Statutes (Rev. to 1968) § 18-97 provides in relevant part: "Any person receiving a fine or prison or jail sentence shall receive credit towards any portion of such fine as is not remitted or any portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such fine or sentence is imposed. The clerk of the court shall enter such credit upon the order in the case of a fine, and upon the mittimus in the case of a sentence and it shall be the duty of the agency or person that held such person under such mittimus to inform the clerk of the court of the proper amount of such credit. . . ."

General Statutes (Rev. to 1968) § 18-98 provides: "Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned is entitled to commutation of his sentence by the number of days which he spent in jail from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The commissioner of correction shall credit such person with the number of days to which the deputy jailer of the jail where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

legislative history of § 18-98, which is the statutory progenitor of § 18-98d (c), indicates that the legislature authorized the commissioner to grant presentence confinement credit because trial courts were not consistently doing so at that time. Testifying in favor of the proposed legislation, Harold Hegstrom, the state jail administrator, stated: "There are a large number of inmates who are [not] released on bond and may wait for months before they come up to trial. . . . Now I understand that there are a number of [j]udges [who] do give consideration to the time that [a] man has spent in jail prior to sentencing, but it is usually the other way around, that no consideration is given to the time [he] is awaiting trial." Conn. Joint Standing Committee Hearings, Corrections, 1967 Sess., p. 55. Indeed, the floor debates on the bill ultimately enacted as § 18-98 indicate the remedial nature of the statutory progenitor of § 18-98d, which was intended to address inequities in sentencing arising from the effects of the bail bond system. See 12 S. Proc., Pt. 5, 1967 Sess., p. 2126, remarks of Senator George Gunther ("I rise in support of this bill. I was amazed in visiting our jails throughout this state, that we have cases of [holdovers] sitting in jail as long as a year, and then to find out that they could be brought into court, sentenced and have to serve an additional [five] or [ten], [fifteen] or [twenty] days. I think this is long overdue, it is another asset in our entire corrections program in the state of Connecticut."); 12 H.R. Proc., Pt. 7, 1967 Sess., p. 3096, remarks of Representative Norris L. O'Neill ("[O]ur bail bond laws have long discriminated against the poor. I think that this bill helps to make up for some of the inequities that have taken place for so long.").

When § 18-98d was enacted in 1980, §§ 18-97 and 18-98 were amended to apply only to persons who were confined for an offense committed prior to July 1, 1981. See Public Acts 1980, No. 80-442, §§ 5 and 6. All subsequent references to §§ 18-97 and 18-98 in this opinion are to the 1968 revisions of those statutes.

Subsequently, in 1980, the legislature enacted § 18-98d in connection with No. 80-442 of the 1980 Public Acts (P.A. 80-442), which provided for comprehensive sentencing reform, including the elimination of indeterminate sentencing in favor of definite sentencing and certain changes to good time credit. Section 2 of P.A. 80-442 was codified in part as § 18-98d and replaced §§ 18-97 and 18-98 with respect to any person who was confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981. Public Act 80-442 also added subsection (c) of § 18-98d, which provides in relevant part that the commissioner "shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence . . . ."

On the basis of the statutory text, read in light of this legislative history, we conclude that trial courts have discretionary authority to direct the commissioner to apply specific presentence confinement credit to the sentence that the court has imposed in accordance with § 18-98d (a) (1) (A). See, e.g., *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 728–29, 295 A.3d 889 (2023) (text remains primary consideration in construction of statute, even when it is ambiguous for purposes of § 1-2z). The legislative history of § 18-98, the progenitor of § 18-98d (c), demonstrates that the legislature was aware in 1967 that some courts had been granting credit for presentence confinement before that time, despite the absence of any specific statutory authority. Nothing in the legislative history or the language of that statute or of § 18-97 indicates that the legislature intended to deprive courts of that authority. To the contrary, the legislative history of § 18-98 indicates that the legislature was concerned that some trial courts were *not* exercising their authority to grant presentence confinement credit in cases in which credit

should have been granted. As a result, persons who were held in presentence confinement for lengthy periods—a disproportionate number of whom were poor and unable to post bond—were spending more time in confinement than intended by the legislature.

Our conclusion that trial courts have the inherent authority to determine presentence confinement credit is consistent with case law from other states. At least one other state supreme court has held that, "as long as any particular confinement credit does not lessen the penalty intended by the [l]egislature, or otherwise frustrate the [l]egislature's constitutional function of establishing criminal penalties . . . the judiciary possesses inherent discretionary authority to grant presentence confinement credit." *State* v. *Martinez*, 126 N.M. 39, 42–43, 966 P.2d 747 (1998); see also *Kronz* v. *State*, 462 So. 2d 450, 451 (Fla. 1985) (trial courts possess "inherent discretionary authority to award credit for time served in other jurisdictions while awaiting transfer to Florida"). In support of this conclusion, the New Mexico Supreme Court reasoned in *Martinez*: "Presentence confinement credit represents a court's recognition that a defendant, in fact, has satisfied a portion of the penalty mandated by the [l]egislature. See *State* v. *Trudeau*, 487 N.W.2d 11, 15 (N.D. 1992) ('[t]ime spent in custody that has been credited toward a sentence is effectively the same thing as time served pursuant to a sentence'). It is the duty of the judiciary, in implementing the directives of the [l]egislature, to exercise reason and ensure that the ends of justice are met." *State* v. *Martinez*, supra, 42.

That reasoning is persuasive. As we explained, trial courts in this state applied credit for presentence confinement to sentences prior to the enactment of §§ 18-97 and 18-98 in 1967, and they have continued to do so

up to the present time.[13] The legislature has never evinced any intent to deprive courts of such authority, and the phrasing of the statutory text strongly suggests that the commissioner's role is indeed one that is shared with the trial court. See, e.g., *William W. Backus Hospital* v. *Stonington*, 349 Conn. 713, 726, 321 A.3d 1117 (2024); *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 346 Conn. 728–29. Because the language of § 18-98d, especially when read in light of its predecessor statutes and the legislative history, reflects an intention that trial courts will continue to exercise their inherent authority to issue orders directing that presentence confinement credit be applied to a particular sentence, we conclude that trial courts have such authority.

In support of its contention that trial courts do not have the inherent authority to apply credit for presentence confinement, the state points out that this court has indicated in a number of cases that "presentence credit is a creature of statute and that, as a general rule, such credit is not constitutionally required." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 833, 860 A.2d 715 (2004); see *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 879, 792 A.2d 774 (2002); *Johnson* v. *Manson*, 196 Conn. 309, 321 n.12, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986). On the basis of this language, the state argues that, in the absence of a statute affirmatively conferring authority on trial courts to order credit for presentence confinement, courts have no such authority. We disagree. Those cases are distinguishable because none

---

[13] As the Appellate Court noted, it has not been a universal position among the judges of the Superior Court that they lack the authority to place orders on judgment mittimuses directing the commissioner to apply specific presentence confinement credit to a defendant's sentence. See *State* v. *Hurdle*, supra, 217 Conn. App. 467–68. This division is evident in the procedural history of the present case, which indicates that Judge Cradle awarded such credit when she sentenced the defendant in the New Haven case.

addressed the specific question at issue in the present case, which is whether a trial court has the inherent authority to order the application of presentence confinement credit or, instead, has such authority *only* if conferred by statute. *Harris*, *Hammond*, and *Johnson* by contrast, addressed the different question of whether a construction of the statute that did not provide jail credit in a given situation violated a prisoner's *constitutional* rights to equal protection.

Instead, this court's description of presentence confinement credit as a creature of statute must be understood within the context of our cases holding that courts do not have exclusive control over sentencing matters generally. It is well settled that, "[w]hatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility . . . these are peculiarly questions of legislative policy. . . . Thus, although the rule of separation of governmental powers cannot always be rigidly applied . . . it must be remembered that the constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment and to the judiciary the power to try offenses under these laws and [to] impose punishment within the limits and according to the methods . . . provided." (Internal quotation marks omitted.) *State* v. *Bischoff*, 337 Conn. 739, 764, 258 A.3d 14 (2021). Credit for presentence confinement in particular is a matter over which all three branches of government have a part. See *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 829, 950 A.2d 1220 (2008) (concluding that § 18-98d is not unconstitutional delegation of judicial sentencing power because it "properly designates to the executive branch the duty to manage a prisoner's sentence once it has been imposed by, for example, calculating applicable credit to reduce time spent in prison"). Thus, we disagree with the state insofar as it contends that, in the absence of a statute

affirmatively conferring authority on trial courts to order credit for presentence confinement, courts have no such authority. Rather, § 18-98d and its predecessors reflect legislative action implementing, supplementing, and limiting that nonexclusive authority.

We also disagree with the state's reliance on this court's decision in *Washington* v. *Commissioner of Correction*, supra, 287 Conn. 792, in support of its "inferential" argument that trial courts do not have the inherent authority to determine credit for presentence confinement pursuant to § 18-98d. In *Washington*, the trial court had sentenced the petitioner to a total effective term of seven years of incarceration in accordance with a plea agreement and declined to direct the commissioner to apply presentence confinement credit under § 18-98d, apparently on the basis of the court's view that it was up to the commissioner to determine the petitioner's entitlement to such credit. Id., 825–26. In a subsequent habeas challenge, this court rejected the petitioner's claim that the trial court had violated the separation of powers by "delegat[ing] a 'strictly judicial function' of sentencing to the executive branch when it deferred to the [commissioner] for the proper calculation and application of the petitioner's presentence confinement credit." Id., 827; see id., 827–29. In rejecting the delegation claim, this court disagreed with the petitioner's reliance "on a footnote in *Hammond* v. *Commissioner of Correction*, [supra, 259 Conn. 855], for the proposition that the [commissioner] must apply presentence confinement credit, 'as ordered by the trial court *even if the detainee has no constitutional or statutory entitlement to such credit*.' " (Emphasis added.) *Washington* v. *Commissioner of Correction*, supra, 829 n.19; see *Hammond* v. *Commissioner of Correction*, supra, 881 n.24. The court held in *Washington* that this observation in *Hammond* "merely indicates that when a petitioner is not statutorily entitled to receive a reduc-

tion in his sentence for presentence incarceration, the court may consider such incarceration, among all other discretionary factors, in determining the appropriate length of the sentence.''[14] *Washington* v. *Commissioner of Correction*, supra, 830 n.19. Although both *Washington* and *Hammond* relate to the trial court's authority to order the commissioner to apply presentence confinement credit under § 18-98d, they do not squarely address the issue before this court in the present case, which concerns the distinct question of whether a trial court has the authority to direct the commissioner to award credit for specific dates of confinement under § 18-98d.[15]

Finally, the state argues that "[p]ublic policy and practical considerations do not favor a dual system of awarding presentence confinement credit." Specifically,

---

[14] It is not entirely clear whether, in *Washington*, this court intended to hold that a trial court has no authority to order presentence confinement credit that is not authorized by statute, or whether it intended to hold that a trial court has no authority to order presentence confinement credit *at all*. To the extent that *Washington* may be read to support the latter proposition, we disavow that interpretation.

[15] The defendant argues that, under this court's decision in *James* v. *Commissioner of Correction*, supra, 327 Conn. 24, the trial court's inherent authority to award presentence confinement credit is not limited by § 18-98d. The defendant posits that §§ 53a-37 and 53a-38, which govern when sentences commence, also influence the trial court's authority to award presentence credit. We disagree. *James* involved the scope of the commissioner's authority under § 18-98d and is entirely silent as to the trial court's inherent authority to award credit beyond that authorized by the statute.

To the extent that the trial court's authority to direct the commissioner to apply presentence credit is limited by § 18-98d, in sentencing a criminal defendant, the trial court has other options available in determining the time that the defendant should be incarcerated after sentencing. For example, it retains the discretion to adjust the overall period of incarceration imposed to address the time that does not qualify for credit under § 18-98d. See *Hammond* v. *Commissioner of Correction*, supra, 259 Conn. 881 n.24 (noting that, in determining sentence, even if defendant has no right to credit for presentence confinement under § 18-98d for time incarcerated in different state, it is within trial court's discretion to consider such presentence confinement *in its sentencing determination*).

the state argues that (1) the commissioner, rather than the trial court, is in the best position to access the information required to make an accurate calculation, and (2) public policy demands consistency and uniformity in the application of presentence confinement credit, and the amount of credit applied should not depend on the discretion of an individual sentencing judge. We disagree. With respect to the state's practicality argument, the defendant makes the unchallenged representation that the commissioner will comply with such court orders, as long as they are sufficiently specific.[16] See *Aviles* v. *Commissioner of Correction*, Docket No. TSR-CV-19-5000129-S, 2020 WL 4815872 (Conn. Super. July 23, 2020). In *Aviles*, the habeas court credited testimony by a records specialist for the department that the commissioner honored orders by trial courts to incorporate presentence confinement credit in a particular manner. Id., *2; see id. (records specialist testified that, "*absent a specific order from the court* noted on the mittimus at sentencing, [the commissioner] is constrained by the statutes governing the calculation and application of sentence credits" (emphasis added)). The records specialist further testified that trial courts, "based on information obtained from defense counsel, easily supplied through the [department's] records section and/or supplemented by computerized records to which counsel may have access, should specify to the [department] the exact date range for the application of such credit." Id. Accordingly, we conclude that trial courts have the ability to obtain accurate presentence confinement information for purposes of directing an award of credit in connection with determining an appropriate sentence.

---

[16] The state does not challenge the accuracy of this contention by the defendant or his reliance on the record in *Aviles* v. *Commissioner of Correction*, Docket No. TSR-CV-19-5000129-S, 2020 WL 4815872 (Conn. Super. July 23, 2020), for this assertion.

Turning to the state's concern about disparity in the award of presentence confinement credit, that concern is mitigated by the limits on the trial court's discretion to award such credit that are imposed by clauses (i) and (ii) of § 18-98d (a) (1) (A), which require the court to count "each day of presentence confinement . . . only once for the purpose of reducing all sentences imposed after such presentence confinement"; General Statutes § 18-98d (a) (1) (A) (i); and only when "the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement . . . ."[17] General Statutes § 18-98d (a) (1) (A) (ii). We will not presume that trial courts will misconstrue those statutory provisions and direct the commissioner to apply less or more credit than that to which the defendant is statutorily entitled.

In summary, we conclude that the trial court has the discretionary authority to direct the commissioner to apply specific presentence confinement dates to a sentence.[18] Trial courts should not hesitate to exercise that authority, consistent with § 18-98d (a) (1) (A), in ensuring that the duration of incarceration reflects the intent of the court in fashioning a sentence.[19] Because the

---

[17] Clause (ii) of § 18-98d (a) (1) (A) provides an exception, not applicable in the present case, allowing presentence confinement credit for imprisonment served, or a fine paid, for a conviction later reversed on appeal.

[18] We emphasize that the trial court has only the discretionary authority to include on the judgment mittimus the specific dates of presentence confinement credit that the commissioner should apply. The commissioner has the ultimate and exclusive responsibility to apply that credit, and any additional presentence credit if applicable, as well as to calculate the defendant's release date.

[19] The calculation of presentence confinement credit becomes more complicated in cases like the present one, in which a defendant receives multiple concurrent sentences in files originating in numerous judicial districts. The defendant also seeks credit for a period (February 26, 2019, through February 18, 2021) during which it appears that he was not confined for inability to post bond or because bail was denied but, instead, was confined because he was serving sentences in other cases. Credit during this period would appear to be foreclosed by this court's construction of § 18-98d in *Harris*, which relied on this court's decision in *Payton* v. *Albert*, 209 Conn. 23, 547

A.2d 1 (1988), overruled in part on other grounds by *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 756 A.2d 1264 (2000). In *Harris*, this court held that, "[w]hen concurrent sentences are imposed on the same date, as in *Payton*, the available presentence confinement days have not yet been utilized," but that, "when concurrent sentences are imposed on different dates, the presentence confinement days accrued simultaneously on more than one docket are utilized fully on the date that they are applied to the first sentence. Hence, they cannot be counted a second time to accelerate the discharge date of any subsequent sentence without violating the language of § 18-98d (a) (1) (A)." *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 823. The present case presents two potential additional issues arising from this application of § 18-98d in accordance with this court's construction of the statute in *Harris*.

First, the defendant summarily contends that, even though § 18-98d (a) (1) (A) expressly precludes awarding presentence confinement credit for time spent serving a sentence, denying credit for this period would violate his constitutional right to due process by unduly burdening his constitutional right to a jury trial. We decline to address this contention because it is inadequately briefed. See, e.g., *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 804–805, 256 A.3d 655 (2021).

Second, as we noted previously; see footnote 1 of this opinion; the legislature amended § 18-98d (a) (1) in 2021 to add a new subparagraph (B), which addresses the calculation of presentence confinement credit in the case of multiple concurrent sentences pending at the time that the sentence was imposed. See Public Acts 2021, No. 21-102, § 21 (P.A. 21-102). That provision provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after October 1, 2021, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (i) each day of presentence confinement shall be counted equally in reduction of any concurrent sentence imposed for any offense pending at the time such sentence was imposed; [and] (ii) each day of presentence confinement shall be counted only once in reduction of any consecutive sentence so imposed . . . ." General Statutes § 18-98d (a) (1) (B).

The legislative history of that provision indicates that it was enacted in response to this court's decision in *Harris*. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 2021 Sess., p. 3070, remarks of Frank J. Riccio II, president of the Connecticut Criminal Defense Lawyers Association (explaining that result of *Harris* was that "[d]efendants with files in multiple court locations could inadvertently lose earned pretrial credits if they are sentenced on different dates" and that "[P.A. 21-102] would remedy that

determination that it had no discretion to direct the commissioner to apply specific presentence confinement dates, the case must be remanded to the trial court so that it may exercise that discretion in the first instance. See, e.g., *State* v. *Ayala*, 324 Conn. 571, 588–89, 153 A.3d 588 (2017) ("the failure to exercise discretion is an abuse in and of itself").

## II

We next address the defendant's claims that the Appellate Court incorrectly determined that (1) the plea agreement did not include an agreement that the defendant would receive presentence confinement credit, and (2) the plea agreement is not void on the ground that there was no meeting of the minds on the issue of presentence confinement credit. We disagree with both claims.

"It is well settled that [p]rinciples of contract law and special due process concerns for fairness govern our interpretation of plea agreements." (Internal quotation marks omitted.) *State* v. *Kallberg*, 326 Conn. 1, 14–15, 160 A.3d 1034 (2017); see also *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) ("the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances"). "[I]n the context of plea agreements, [t]he primary goal of contract interpretation is to effec-

problem"). The legislature's enactment of subparagraph (B) of § 18-98d (a) (1) strongly suggests that it did not agree with the result of this court's decision in *Harris* and intended to overrule it prospectively. See General Statutes § 18-98d (a) (1) (B) (provision applies only to persons who committed offense on or after October 1, 2021). Because the trial court declined to order any presentence confinement dates on the judgment mittimus in the present case, the continuing vitality of *Harris* and our other § 18-98d case law in the wake of the 2021 amendment to the statute is not before us. Accordingly, we leave to another day any questions concerning the proper calculation of presentence confinement in cases subject to its terms.

tuate the intent of the parties . . . . In ascertaining that intent, we employ an objective standard and look to what the parties reasonably understood to be the terms of the plea agreement on the basis of their words and conduct, and in light of the circumstances surrounding the making of the agreement and the purposes they sought to accomplish." (Citation omitted; internal quotation marks omitted.) *State* v. *Kallberg*, supra, 15; see also *United States* v. *Davis*, Docket No. 91-30430, 1994 WL 1712, *1 (9th Cir. January 4, 1994) (decision without published opinion, 15 F.3d 1091) ("the formation of a plea agreement is measured by objective manifestations of assent to specific terms").

Moreover, "[i]t is well settled that the threshold determination as to whether a plea agreement is ambiguous as to the parties' intent is a question of law subject to plenary review. . . . If the reviewing court deems the agreement ambiguous and extrinsic evidence has been offered to dispel that ambiguity, such as testimony regarding the facts surrounding the making of the agreement, then intent is a question of fact for the trial court, reversible only if clearly erroneous. . . . If, however, the agreement is ambiguous and no extrinsic evidence has been offered, resolution of the dispute as to the parties' intent necessarily hinges on what inferences can be drawn solely from the four corners of the agreement. Under such circumstances, the intention of the parties presents a question of law over which we exercise plenary review. . . . In the absence of extrinsic evidence, determining the intent of the parties does not require resolution of disputed facts or credibility assessments." (Citations omitted.) *State* v. *Kallberg*, supra, 326 Conn. 16–17.

In the present case, the sole evidence before the trial court, in determining the terms of the plea agreement, consisted of the representations of counsel and the canvass of the defendant. Applying plenary review to

the defendant's claim that the plea agreement included an agreement that the defendant would receive presentence confinement credit for the time that he spent serving the sentences in connection with the Ansonia-Milford and the New Haven cases, we agree with the Appellate Court that the record contains no evidence that would support such a finding. See *State* v. *Hurdle*, supra, 217 Conn. App. 470–71. To the contrary, the record shows that Brown represented to the trial court at the February 18, 2021 sentencing hearing that, although he told the defendant that he would seek presentence confinement credit, "[he] did not tell him there was an agreement for jail credit" and that "[t]here was not [such an agreement], and [he could not] represent that there was." In addition, the prosecutor represented to the court that, in his view, he had no authority to enter into an agreement for presentence confinement credit. We therefore conclude that the trial court correctly determined that the plea agreement did not include an agreement concerning the award of presentence confinement credit.

With respect to the defendant's alternative claim that the plea agreement is void because there was no meeting of the minds on the issue of presentence confinement credit, we conclude that, although the record might support the conclusion that the defendant *subjectively* believed that he would receive jail credit in the present case for the time that he had spent serving the sentences in connection with the Ansonia-Milford and New Haven cases, that subjective belief was wholly unreasonable, and the evidence supports a finding that the plea agreement with the state did not include any such credit. At the January 28, 2021 hearing, the prosecutor represented that Judge McShane had expressly warned the defendant at the February 13, 2019 hearing—at which the prosecutor was present—that, if he started serving his sentence for violating his probation

in the Ansonia-Milford cases, he would not receive credit for that time in the New Haven case or in the present case, and that the defendant confirmed twice that he understood that fact. Indeed, the prosecutor stated that, in his view, he had no authority to enter into such an agreement. In light of these representations, we conclude that Appellate Court correctly determined that the trial court's rejection of the defendant's claim that the plea agreement was void because there was no meeting of the minds was not clearly erroneous.

In support of his claim to the contrary, the defendant contends that Brown stated at the February 18, 2021 hearing that "the state represented in a pretrial negotiation that the seven and one-half year sentence would result in the [defendant's] serving four more years than he was currently serving," and the prosecutor did not dispute this claim. This contention rests on an inaccurate factual premise. Brown told the court at the February 18, 2021 hearing that he had found a note in his case file indicating that *he* "[believe[*d*]]" that, under the state's plea offer, the seven and one-half year sentence would result in the defendant's serving only an additional four years in prison, but he acknowledged that his personal understanding of the offer may have been inaccurate. He also suggested that his discussion with the defendant regarding what he believed to have been the state's offer may have been the basis for the defendant's misunderstanding. As we indicated, Brown candidly acknowledged at the hearing that he had not made any such agreement with the state concerning credit for presentence confinement. We therefore reject this claim.

The judgment of the Appellate Court with respect to its conclusion regarding the trial court's authority to order the commissioner to apply presentence confinement credit to the defendant's sentence is reversed and the case is remanded to that court with direction to

reverse the trial court's judgment with respect to the presentence confinement credit issue and to remand the case to the trial court for further proceedings according to law; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.